Miscellaneous Action No. 18-mc-51358
Criminal Action No. 17-cr-20274

---

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

*Plaintiff,*

– v. –

JUMANA NAGARWALA, et al.,

*Defendants.*

---

## BRIEF OF *AMICI CURIAE* EQUALITY NOW, WESPEAKOUT,
## SAHIYO, AND SAFE HANDS FOR GIRLS
## IN SUPPORT OF THE UNITED STATES

---

Shelby Quast
*Counsel for Equality Now*
EQUALITY NOW
125 Maiden Lane B
New York, NY 10038
212-586-0906
squast@equalitynow.org

Schona Jolly QC
*Of Counsel*
CLOISTERS
1 Pump Court
London, EC4Y 7AA
United Kingdom

Lucy Martinez
*Of Counsel*

Luke A. Sobota
*Counsel of Record*
Jessica Ji
Amelia Keene
Philipp Kotlaba
Kimberly Larkin
Ana Lenard
Laura Pereira
Nastasja Suhadolnik
*Of Counsel*
THREE CROWNS LLP
3000 K Street NW, Suite 101
Washington, DC 20007
(202) 540-9477
luke.sobota@threecrownsllp.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................**Error! Bookmark not defined.**

INTEREST OF *AMICUS CURIAE*..........................................................................1

SUMMARY OF ARGUMENT ...............................................................................4

ARGUMENT ..........................................................................................................5

    I.    FGM is a Serious Human Rights Violation that Affects Girls and Women in the United States and Worldwide .......................................5

    II.    The Government's Criminalization of FGM Falls Squarely Within Its Treaty Power and Comports with International Best Practice ..............................................................................................11

        A.    Congress's Enactment of 18 U.S.C. § 116 Rationally Relates to the United States' Treaty Commitments and Is Owed Substantial Deference......................................................12

        B.    Numerous Countries Have Passed National Level Bans in Furthernace of the International Condemnation of FGM .........13

        C.    The ICCPR Is One of Several International Treaties Condemning FGM As A Fundamental Human Rights Violation....................................................................................19

    III.    The United States' Enactment and Enforcement of 18 U.S.C. 116 Is Justified Under the Commerce Clause ...........................................22

CONCLUSION ....................................................................................................26

CERTIFICATE OF SERVICE .............................................................................27

# TABLE OF AUTHORITIES

## <u>United States Sources</u>

**Cases**

*Agency for Int'l Devp't v. Alliance for Open Society Int'l*,
133 S.Ct. 2321 (2013)...................................................................................2

*Flores-Villar v. U.S.*,
131 S.Ct. 2312 (2011)...................................................................................2

*Garcia v. San Antonio Transit Auth.*,
469 U.S. 528, 557 (1985).............................................................................13

*Katzenbach v. McClung*,
379 U.S. 294 (1964).....................................................................................13

*National League of Cities v. Usery*,
426 U.S. 833 (1976).....................................................................................13

*Nguyen v. I.N.S.*,
533 U.S. 53 (2001).........................................................................................2

*Sessions, Attorney General v. Morales Santana*,
137 S.Ct. 1678 (2017)...................................................................................2

*U.S. v. Lopez*,
514 U.S. 546, 562 (1995).............................................................................13

*Williamson v. Lee Optical*,
348 U.S. 483, 487 (1955).............................................................................13

**Statutes and Rules**

18 U.S.C. § 116........................................................... 1, 4, 5, 11, 12, 13, 14, 22, 23

U.N.G.A. Res.67/146 ....................................................................................7

Congressional Findings, Pub. L. 104-208, Div. C, § 605(a) ....................................13

U.S. CONST. art. 1 § 8, cl. 3 ........................................................................4

## International Materials

**Treaties**

Convention against Torture and Other Cruel, Inhuman or Degrading
    Treatment or Punishment, Oct. 21, 1994, ) 1465 U.N.T.S. 85
    (adopted by the United States Dec. 10, 1984) ...............................11, 20

European Convention on Human Rights, Nov. 4, 1950, 213 U.N.T.S.
    221, E.T.S. 5 ....................................................................................20

European Convention on the Elimination of All Forms of
    Discrimination Against Women, Dec. 18, 1979, 1249 U.N.T.S. 13 ..............5, 11

Europe Convention on Preventing and Combating Violence Against
    Women and Domestic Violence, Nov. 5, 2011, C.E.T.S. No. 210 ..............19, 20

International Covenant on Civil & Political Rights,
    June 8, 1992, 999 U.N.T.S. 171 (adopted by the United States
    Sept. 8, 1992) ..................................................................................12, 20

Protocol to the African Charter on Human & Peoples' Rights on the
    Rights of Women in Africa (*Maputo Protocol*), Sept. 13, 2000,
    OAU Doc. CAB/LEG/66.6 ....................................................................1, 18, 20

U.N. Convention on the Rights of the Child,
    Sept. 2, 1990 ....................................................................................11

**Interpretive Materials**

Rep. of the U.N. Special Rapporteur on Torture & Other Cruel,
    Inhuman or Degrading Treatment or Punishment, U.N. Doc.
    A/HRC/7/3 (Jan. 15, 2008)…………….....…….................................................21

Rep. of the U.N. Special Rapporteur on Torture & Other Cruel,
    Inhuman or Degrading Treatment or Punishment, U.N. Doc.
    EN.4/1986/15 (Feb. 19, 1986) ..........................................................21

Rep. of the U.N. Special Rapporteur on Torture & Other Cruel,
Inhuman or Degrading Treatment or Punishment, U.N. Doc.
A/HRC/31/57 (Jan. 5, 2016) ................................................................21

U.N. Committee Against Torture, Conclusion & Recommendations:
Cameroon, Doc. CATFGM/CFGM/CR/31/6 (Feb. 11, 2004) ..........................21

U.N. Committee Against Torture, Concluding Observations on the
Initial Report of Mauritania adopted by the Committee at Its
Fiftieth Session (6–31 May 2013), Doc. CAT/C/MRT/CO/1
(June 18, 2013) ..............................................................................21

U.N. Committee Against Torture, General Comment No. 2,
Doc. CATFGM/C/GC/2 (Jan. 24, 2008) ............................................21

U.N. Committee on the Elimination of Discrimination Against
Women, General Recommendation No. 14: Female Circumcision,
Doc. A/45/38 (1990) ..........................................................................5

U.N. Committee on the Elimination of Discrimination Against
Women, Gen. Rec. No. 19: Violence Against Women (1992),
http://www.refworld.org/docid/52d920c54.html...................................9

U.N. Human Rights Comm., General Comment No. 28: Article 3, The
Equality of Rights Between Men & Women, U.N. Doc.
CCPRFGM/C/21/Rev.1/Add.10 (Mar. 29, 2000)...............................12

## International Law Cases

*Collins & Akaziebe v. Sweden*,
Eur. Ct. H.R. Case No. 23944/05, (Mar. 8, 2007) ...............................20

*Izevbekhai v. Ireland*,
Eur. Ct. H.R. Case No. 43408/08, ¶73 (May 17, 2011) ......................20

*Omerodo v. Austria*,
Eur. Ct. H.R. Case No. 8969/10 (Sept. 2011)....................................20

*Sow v. Belgique*,
Eur. Ct. H.R. Case No. 27081/13, ¶62 (Jan. 19, 2016) ......................20

## **<u>Foreign Legal Materials</u>**

### **Canada**

Criminal Code, R.S.C. 1985, c C-46, §268(3).........................................................16

Criminal Code, R.S.C. 1985, c C-46, §273(3).........................................................16

Criminal Code, R.S.C. 1985, c C-46, §21(1)...........................................................16

Ontario Human Rights Commission,
  Policy on Female Genital Mutilation (FGM): FGM in Canada
  (Apr. 9, 1996), http://www.ohrc.on.ca/en/policy-female-genital-
  mutilation-fgm/4-fgm-canada ..............................................................16

### **Germany**

German Criminal Code, § 226a ...............................................................16

German Parliament, Seventeenth Legislative Period,
  *Draft Criminal Law Amendment – Effective Campaign Against
  Female Genital Mutilation*, Doc. No. 17/12374 (Feb. 19, 2013).......................17

German Parliament, Eighteenth Legislative Period,
  *Twelfth Report of the Federal Government on Its Human Rights
  Politics*, Doc. No. 18/10800 (Dec. 22, 2016) ....................................17

### **United Kingdom**

Prohibition of Female Circumcision Act 1985 (re-enacted under the
  Female Genital Mutilation Act 2003), §§4, 5 (Eng.)..........................................14

Stmt. by Lord Alton of Liverpool,
  792 Parl. Deb. H.L. col. 1424 (July 20, 2018)....................................15

UNITED KINGDOM HOME OFFICE, FGM PROTECTION ORDERS: A GUIDE
  TO THE COURT PROCESS (1st ed. 2015) ..............................................15

**Kenya**

Children Act (No. 8 of 2001) (2017 rev.) ...................................................................18

Kenyan Penal Code (2014 rev.) ...............................................................................18

Prohibition of Female Genital Mutilation Act
(No. 32 of 2011) (2012 rev.) ..............................................................................18

Protection Against Domestic Violence Act (No. 2 of 2015) ...................................18

OFFICE OF THE ATTORNEY GENERAL & DEPARTMENT OF JUSTICE,
RESPONSE TO THE QUESTIONNAIRE FOR MEMBER STATES,
H.R.Council Res. 27/22 (Apr. 21, 2015) ............................................................19

**New Zealand**

Crimes Amendment Act 1995 (1995 No 49), §204A(1) ..........................................15

Alec Neill (Waitaki) Crimes Amendment Bill (No. 2)
(second reading) 1995, Hansard vol. 547 ..........................................................15

**South Africa**

Children's Act 38 of 2005, §§12(3), 305(1), 305(6)
BSRSA (updated through 2012) ..........................................................................17

Children's Act 38 of 2005, §12(1) ...........................................................................17

## Other Authorities

*Burkina Faso botched FGM leaves 50 girls in hospital,* BBC News
(Sept. 17, 2018), https://www.bbc.co.uk/news/world-africa-
45551615...........................................................................................................10

EQUALITY NOW, FACTSHEET ON FEMALE GENITAL
    MUTILATION/CUTTING WITHIN THE UNITED STATES (Sept. 2018),
    https://d3n8a8pro7vhmx.cloudfront.net/equalitynow/pages/216/atta
    chments/original/1536875107/FGMintheUS_factsheet_Sept2018.p
    df?1536875107 ..................................................................................24

Howard Goldberg et al., *Female Genital Mutilation/Cutting in the
    United States: Updated Estimates of Women & Girls at Risk, 2012*,
    CENTERS FOR DISEASE CONTROL & PREVENTION PUBLIC HEALTH
    REPORTS 1 (MAR.-APR. 2016),
    https://www.uscis.gov/sites/default/files/USCIS/Humanitarian/Spe
    cial%20Situations/fgmutilation.pdf ....................................................6

Kate Hodal, *Somalia under renewed scrutiny over FGM after two
    more young girls die*, THE GUARDIAN (Sept. 17, 2018),
    https://www.theguardian.com/global-
    development/2018/sep/17/somalia-under-renewed-scrutiny-over-
    female-genital-mutilation-after-two-more-young-girls-
    die...................................................................................................10

NORWEGIAN KNOWLEDGE CENTRE FOR HEALTH SERVICES, IMMEDIATE
    HEALTH CONSEQUENCES OF FEMALE GENITAL MUTILATION/CUTTING
    (2014),
    https://fhi.no/globalassets/dokumenterfiler/rapporter/2014/rapport_
    2014_8_immediate_fgm.pdf ...............................................................9

POPULATION REFERENCE BUREAU, FEMALE GENITAL
    MUTILATION/CUTTING IN THE UNITED STATES (2016)
    https://www.prb.org/us-fgmc/............................................................22

U.N. CHILDREN'S FUND, FEMALE GENITAL MUTILATION/CUTTING: A
    GLOBAL CONCERN (Dec. 2016),
    https://www.unicef.org/media/files/FGMC_2016_brochure_final_
    UNICEF_ SPREAD.pdf.... ................................................................ 6

United Nations, Transforming Our World: The 2030 Agenda for Sustainable
    Development, U.N. Doc. A/Res/70/, https://sustainabledevelopment.un.org/
    content/documents/21252030%20Agenda%20for%20Sustainable
    %20Development%20web.pdf ..............................................................7

U.N. Population Fund, Calling for the End of the Medicalization of Female Genital Mutilation (June 2018), https://www.unfpa.org/sites/default/files/resource-pdf/FGM_Policy_Brief_On_Medicalization_Brochure__PDF_June_18.pdf....10

U.N. Special Rapporteur on Violence Against Women, 15 Years of the United Nations Special Rapporteur on violence against women, its causes & consequences 1994–2009 – A Critical Review (Nov. 25, 2008), https://www.ohchr.org/Documents/Issues/Women/15YearReviewofVAWMandate.pdf ............................................................................21

U.N. World Health Organization *et al.*, Eliminating Female Genital Mutilation: An Inter-Agency Statement, (2008), http://www.who.int/reproductivehealth/publications/fgm/9789241596442 /en/........................................................................................8, 9

U.N. World Health Organization, Female Genital Mutilation & obstetric outcome: WHO Collaborative prospective study in six African countries (2006), http://www.who.int/reproductivehealth/publications/fgm/fgm-obstetric-study-en.pdf ………..……………………….................9

U.N. World Health Organization, Female genital mutilation: Fact Shee*t* (Jan. 2018), http://www.who.int/mediacentre/factsheets/fs241/en/ ............................6, 9, 14

U.N. World Health Organization, It's Our Job as Health Workers to Do No Harm, (May 16, 2016), http://www.who.int/mediacentre/commentaries/fgm-do-no-harm/en/ ........................................................................10

U.N. World Health Organization *et al.,* Female genital mutilation: a joint WHO/UNICEF/UNFPA statement, (1997)...................................8

U.N. World Health Organization *et al.*, Regarding the "Policy Statement – Ritual Genital Cutting of Female Minors" from the American Academy of Pediatrics (2010), http://www.who.int/reproductivehealth/topics/fgm/fgm_app_statement.pdf ........................................................................8

U.S. Agency for Int'l Development, *United States Global Strategy to Empower Adolescent Girls* (2016), https://www.state.gov/documents/organization/254904.pdf. ............................13

U.S. Agency for Int'l Development, United States Strategy to Prevent & Respond to Gender-Based Violence Globally (2012), https://pdf.usaid.gov/pdf_docs/PDACT888.pdf .................................................13

U.S. Immigration and Customs Enforcement, ICE fights to protect girls & women from mutilation & abuse (Nov. 20, 2017) https://www.ice.gov/news/releases/ice-fights-protect-girls-and-women-mutilation-and abuse............................................................................25

WESPEAKOUT, FEMALE GENITAL MUTILATION – A GUIDE TO ELIMINATING THE PRACTICE OF FGM IN INDIA (Mar. 2017), http://wespeakout.org/site/assets/files/1359/fgm_lawyers_collectiv e_doc.pdf...............................................................................................3

WESPEAKOUT, THE CLITORAL HOOD – A CONTESTED SITE: KHAFID OR FEMALE GENITAL MUTILATION/CUTTING IN INDIA (2018), http://wespeakout.org/site/assets/files/1439/fgmc_study_results_ja n_2018.pdf .......................................................................................3, 9

## INTEREST OF *AMICI CURIAE*

**Equality Now** is an international human rights organization that advocates for the protection and promotion of the rights of women and girls worldwide, with a membership network of individuals and organizations in more than 160 countries.  Founded in 1992, one of Equality Now's first global campaigns called on the United Nations to dedicate more resources to end female genital mutilation (**FGM**),[1] and it played a critical role in adoption of the "Maputo Protocol" to the African Charter on Human and Peoples' Rights, a regional women's rights treaty which explicitly recognizes FGM as a human rights violation.[2]

At the national level, Equality Now has been at the forefront of efforts to eradicate FGM, pushing for laws that protect girls and criminalize the practice, and supporting grassroots activists working to end FGM in their communities. Although laws such as 18 U.S.C. § 116 are an important step forward, much work remains to be done to fully stamp out FGM.  Equality Now has advocated for laws to fully protect girls and ban FGM in countries including the United Kingdom, the

---

[1]     In this brief, *Amici* use the term "FGM" as adopted by the United States in its brief in opposition to describe the practice of partial or total removal of the external female genitalia, or other injury to the female genital organs for non-medical reasons.   The acronym is intended to be inclusive of other terms referencing the practice, such as female genital cutting (**FGC**), female circumcision, and *khafz* or *khatna*.

[2]     Protocol to the African Charter on Human & Peoples' Rights on the Rights of Women in Africa (**Maputo Protocol**), Sept. 13, 2000, OAU Doc. CAB/LEG/66.6,                http://www.achpr.org/files/instruments/women-protocol/achpr_instr_proto_women_eng.pdf.

United States, Kenya, Liberia, Mali, and Tanzania, and has been active in mobilizing support for the United Nation's 2030 Agenda for Sustainable Development target to eliminate FGM.  In Kenya, Equality Now appears as an interested party in an ongoing litigation concerning the Prohibition of FGM Act of 2011, and has partnered with the Director of Public Prosecutions and the anti-FGM Board to that end.  In the United States, Equality Now has successfully advocated for anti-FGM laws at state and federal levels, and in 2016 co-sponsored the "End Violence Against Girls Summit on FGM," the first-ever such summit held in the United States.  Equality Now has also submitted *amicus* briefs before various bodies, including the United States Supreme Court.[3]

**Sahiyo** is a non-governmental organization that empowers Asian communities—including the Bohra community—to end FGM through dialogue, education and collaboration based on community involvement.  In 2015, Sahiyo pioneered a global study on FGM among the Bohra.  The results, released in 2017, contained insights from 384 women (the highest number of which reside in India and the United States).  Virtually the same percentage of respondents who had undergone FGM (80%) wanted to see the practice stopped (81%).  Sahiyo's other programming includes storytelling initiatives from hundreds of FGM survivors,

---

[3]    *See e.g.*, *Sessions, Attorney General v. Morales Santana*, 137 S.Ct. 1678 (2017); *Flores-Villar v. U.S.*, 131 S.Ct. 2312 (2011); *Nguyen v. INS*, 533 U.S. 53 (2001); *Agency for Int'l Devp't v. Alliance for Open Society International*, 133 S.Ct. 2321 (2013).

digital story videos, photo-campaigns, and support groups in which people from FGM-practicing communities can speak openly without fear of reprisal.

**WeSpeakOut** is the largest FGM survivor-led organization of Bohra women in India, where the practice is also known as *khafz* or *khatna*.  WeSpeakOut also has members belonging to the Bohra diaspora based in countries including the United States, Australia, Canada, and the United Kingdom.  Since its formation in 2015, WeSpeakOut has published a detailed legal report on FGM in India that surveys international and national laws with respect to children's and women's rights,[4] and has also disseminated documentation of the prevalence of FGM within India and in the Bohra community.[5]  Its founder represents WeSpeakOut in pending litigation before the Supreme Court of India concerning the practice.

**Safe Hands for Girls** was founded in 2013 to help eradicate FGM and other forms of gender-based violence.  Through programs in the Gambia and the United States., the organization supports FGM survivors, mobilizes young people, and advocates at the national level for laws and policies to end FGM.  Its founder, Jaha Dukureh, is a United Nations Women Regional Goodwill Ambassador to Africa.

---

[4]    WESPEAKOUT, FEMALE GENITAL MUTILATION – A GUIDE TO ELIMINATING THE PRACTICE OF FGM IN INDIA (Mar. 2017), http://wespeakout.org/site/assets/files/1359/fgm_lawyers_collective_doc.pdf

[5]    WESPEAKOUT, THE CLITORAL HOOD – A CONTESTED SITE: KHAFID OR FEMALE GENITAL MUTILATION/CUTTING IN INDIA (2018), http://wespeakout.org/site/assets/files/1439/fgmc_study_results_jan_2018.pdf.

## SUMMARY OF ARGUMENT

Female genital mutilation and cutting (*FGM*) is a serious human rights abuse which occurs across the United States and around the world. An abhorrent practice, FGM has serious physical and psychological effects on its victims that stay with them their entire lives. Keenly aware that FGM is a global and commercial phenomenon which transcends state lines, "beyond the ability of any single State or local jurisdiction to control," the United States enacted 18 U.S.C. § 116 (*Section 116*) to stop FGM throughout its territory and at its borders.

With Section 116, the United States joined scores of countries that have also condemned FGM at the national level. At least 59 countries have passed laws against FGM in line with their international treaty commitments to combat the practice, which intersects with prohibitions of child abuse, gender discrimination, violence against women and girls, and/or torture. As the examples of criminal statutes set out below demonstrate, the United States' enactment of Section 116 fully accords with international practice.

Congress thus acted reasonably in considering that the Treaty Power and the Commerce Clause afford it Article I competence to enact Section 116, particularly where a partial, state-by-state approach would gravely undermine the vindication of international rights which the United States is legally bound to protect. The charges under Section 116 at issue in the instant motion should be brought to trial.

**ARGUMENT**

## I.   FGM IS A SERIOUS HUMAN RIGHTS VIOLATION THAT AFFECTS GIRLS AND WOMEN IN THE UNITED STATES AND WORLDWIDE

Female genital mutilation is, fundamentally, a human rights issue.  Directed at women and girls, the practice crosses race, religious, ethnic, socio-economic, education and geographic lines.  Internationally, it is recognized as a violation of the rights of women and girls to physical integrity, health, and equality, and has long been classified by the United Nations as a form of violence against women.[6] FGM is a form of gender-based violence and child abuse—no matter the degree, severity, or motivation.  Although the reasons underlying its practice are numerous and varied, FGM has no legitimate justification but instead contributes to the oppression of women and girls worldwide.  It today stands universally condemned in the legal, medical, and scientific communities.

Despite this condemnation, FGM continues to affect millions of women and girls around the world, including in the United States.   The United Nations

---

[6]   Convention on the Elimination of All Forms of Discrimination against Women, arts. 1, 2(f), 5(a), 1249 U.N.T.S. 13 (entry into force, 3 September 1981). The U.S. signed the Convention on 17 July 1980, but has not ratified it.  The Committee on the Elimination of Discrimination Against Women confirmed in 1990 that FGM/C is a form of discrimination against women that States must act to eliminate. Committee on the Elimination of Discrimination Against Women, General Recommendation No. 14: Female Circumcision, Doc. A/45/38, Corrigendum, Preamble and ¶(a) (1990).

Children's Fund (**UNICEF**) has estimated that over 200 million women and girls currently live with the physical and emotional complications of FGM, with 8,000 more at risk every day.[7]  In the United States, the Center for Disease Control and Prevention in 2016 estimated that 513,000 women and girls had undergone or were at risk of undergoing FGM.[8]

The implications of this case are thus not confined to the Dawoodi Bohra community in Michigan, Minnesota, and Illinois.  FGM is instead a global issue. There is a strong global movement of survivors, activists, community leaders, healthcare providers, educators, law- and policy-makers, and international organizations working together to end the practice.

Laws protecting girls' rights are a critical step toward eliminating FGM. They can accelerate social change, especially when effectively implemented and rigorously enforced.  In contrast, without proper legal prohibitions, millions of girls will continue to be subject to this horrific practice.  Recognizing this basic

---

[7]  U.N. Children's Fund, Female Genital Mutilation/Cutting: A Global Concern (Dec. 2016), https://www.unicef.org/media/files/FGMC_2016_brochure_final_UNICEF_SPRE AD.pdf.  *See also* World Health Organization, "Female genital mutilation: Fact Sheet", (Jan. 2018), http://www.who.int/mediacentre/factsheets/fs241/en/.

[8]  Howard Goldberg et al., *Female Genital Mutilation/Cutting in the United States: Updated Estimates of Women & Girls at Risk, 2012*, CENTERS FOR DISEASE CONTROL & PREVENTION PUBLIC HEALTH REPORTS 1 (MAR.-APR. 2016), https://www.uscis.gov/sites/default/files/USCIS/Humanitarian/Special%20Situatio ns/fgmutilation.pdf

truth, at least 59 countries currently ban or criminalize FGM.  In 2015, 193 countries, including the United States, called for the global elimination of FGM by 2030, declaring this to be "of critical importance for humanity and the planet."[9] The U.N. General Assembly has likewise urged "all necessary measures, including enacting and enforcing legislation, to prohibit female genital mutilations . . . and to end impunity."[10]

Survivors are courageously breaking the silence around FGM. They are raising awareness of the harms caused by FGM and are speaking out in their families, communities, and globally about the serious physical and psychological consequences of FGM—consequences which last a lifetime.  By bravely sharing their stories, these women and girls are dispelling the "myths" that FGM is a religious issue or something that happens only in a small handful of countries. Their testimonies are included in **Annex 1**.

The World Health Organization (**WHO**), UNICEF, and the United Nations Population Fund (**UNFPA**) jointly define FGM as comprising "all procedures

---

[9]  Transforming Our World: The 2030 Agenda for Sustainable Development, setting a metric to "[e]liminate all harmful practices, such as child, early and forced marriage, and female genital mutilation", Doc. A/Res/70/1, https://sustainabledevelopment.un.org/content/documents/21252030%20Agenda%20for%20Sustainable%20Development%20web.pdf.

[10] U.N.G.A. Res.67/146, Intensifying global efforts for the elimination of female genital mutilations, U.N. Doc. A/RES/67/146 (Dec. 20, 2012), http://www.un.org/en/ga/search/view_doc.asp?symbol=A/RES/67/146.

involving partial or total removal of the external female genitalia or other injury to the female genital organs for non-medical reasons."[11]  According to this definition, FGM may be classified into four degrees of severity.[12]  All classifications, however, are recognized as harmful, gender-based violence.  A joint statement issued by the WHO, UNICEF, UNFPA and the United Nations Development Fund for Women, puts it plainly: "Performing FGM of any type on girls compromises their human rights."[13]

FGM is a public health issue.  All forms can cause serious and well-documented complications and pathologies, both immediately after the mutilation

---

[11]    World Health Organization, UNICEF, & UNFPA, *Female genital mutilation: a joint WHO/UNICEF/UNFPA statement,* p. 2 (1997), http://apps.who.int/iris/handle/10665/41903.

[12]    World Health Organization, Eliminating Female Genital Mutilation: An Inter-Agency Statement, (2008), http://www.who.int/reproductivehealth/publications/fgm/9789241596442/en.  The types are defined as follows: "Type I: Partial or total removal of the clitoris and/or the prepuce (clitoridectomy). Type II: Partial or total removal of the clitoris and the labia minora, with or without excision of the labia majora (excision). Type III: Narrowing of the vaginal orifice with creation of a covering seal by cutting and appositioning the labia minora and/or the labia majora, with or without excision of the clitoris (infibulation), Type IV: all other harmful procedures to the female genitalia for non-medical purposes, including pricking, piercing, incising, scraping and cauterization."

[13] World Health Organization, UNICEF, UNFPA, UNIFEM, Regarding the "Policy Statement – Ritual Genital Cutting of Female Minors" from the American Academy of Pediatrics (2010), http://www.who.int/reproductivehealth/topics/fgm/fgm_app_statement.pdf.

and over the long term.[14]  The procedure of FGM itself is traumatic, and girls are usually physically held down during the procedure.    Other immediate complications include pain, excessive bleeding, swelling, and problems with wound healing and urinal retention.  Notably, researchers have found that FGM Type IV, trivialized as "nicking" by its practitioners, presents a substantially similar risk of immediate health complications as do Types I and II.[15]  All types have health risks, including infections, complications during childbirth, sexual dysfunction, psychological consequences,[16] and adverse obstetric outcomes.[17]  And

---

[14]    World Health Organization, Female genital mutilation: Fact Sheet (Jan. 31, 2018), http://www.who.int/mediacentre/factsheets/fs241/en;  *see also*  U.N. Committee on the Elimination of Discrimination against Women (*CEDAW Committee*), Gen. Recommendation 19: Violence Against Women (1992), http://www.refworld.org/docid/52d920c54.html.

[15]    Norwegian Knowledge Centre for Health Services, Immediate health consequences of female genital mutilation/cutting (2014), https://fhi.no/globalassets/dokumenterfiler/rapporter/2014/rapport_2014_8_immediate_fgm.pdf.

[16]    World Health Organization, Eliminating Female Genital Mutilation: An Inter-Agency Statement, (2008) http://www.who.int/reproductivehealth/publications/fgm/9789241596442/en.  *See also* LAKSHMI ANANTNARAYAN, SHABANA DILER, NATASHA MENON, THE CLITORAL HOOD: A CONTESTED SITE – KHAFD OR FEMALE GENITAL MUTILATION/CUTTING IN INDIA (Jan. 2018), http://wespeakout.org/site/assets/files/1439/fgmc_study_results_jan_2018.pdf.

[17]    World Health Organization, Female Genital Mutilation and obstetric outcome: WHO Collaborative prospective study in six African countries (2006). The study outcomes are classified by type of FGM, and reveal that women who have undergone FGM are significantly more likely than those without FGM to have adverse obstetric outcomes. Though it found that that the risks seem to be greater with more extensive FGM, even Type I FGM was found to result in higher

FGM has no known health benefits—only lifelong physical and mental consequences for the women and girls on whom it is performed.

Efforts to sanitize FGM by claiming it is performed in a medical setting have been vigorously rejected by medical associations around the world.[18] As the WHO has explained, health workers who carry out the practice are actively causing physical and psychological harm, and helping to perpetuate an abhorrent form of discrimination against women and girls.[19]

FGM exacts a tragic price. This month alone (September 2018), three girls are known to have died in Somalia[20] (local advocates suggest the true figure is much higher), and fifty girls have been hospitalized in Burkina Faso after undergoing FGM.[21] This is the stark reality underlying these proceedings, and it is

---

risk of postpartum haemorrhage, prolonged labour, difficult delivery, obstetric tears/lacerations, longer maternal hospital stay, and higher still birth rates.

[18]     UNFPA, Brief on Medicalization (June 2018). "Medicalization" is a term that describes the practice of FGM by health-care providers, whether in a public or private clinic, at home, or elsewhere.

[19]     World Health Organization, *It's our job as Health Workers to Do No Harm*, (May 16, 2016), http://www.who.int/mediacentre/commentaries/fgm-do-no-harm/en.

[20]     Kate Hodal, *Somalia under renewed scrutiny over FGM after two more young girls die*, THE GUARDIAN (Sept. 17, 2018), https://www.theguardian.com/global-development/2018/sep/17/somalia-under-renewed-scrutiny-over-female-genital-mutilation-after-two-more-young-girls-die.

[21]     Burkina Faso botched FGM leaves 50 girls in hospital (Sept. 17, 2018), https://www.bbc.co.uk/news/world-africa-45551615

this reality which *Amici* urge the Court to bear in mind when considering Defendants' facial challenge to Section 116.

## II.   THE U.S. GOVERNMENT'S CRIMINALIZATION OF FGM FALLS SQUARELY WITHIN ITS TREATY POWER AND COMPORTS WITH THE INTERNATIONAL CONSENSUS

FGM is a human rights violation of manifold character.  The practice has been recognized as a public safety issue and has been condemned as a form of child abuse, gender discrimination, violence against women and girls, and even torture.  It is therefore unsurprising that any number of international human rights treaties encompass the practice of FGM: the Convention on the Rights of the Child, the Convention on the Elimination of All Forms of Discrimination Against Women, and the Convention Against Torture, to name but a few. *See* Section III.C.

As relevant here, the U.S. Government has explained that Section 116 "rationally relates to implementing" the International Covenant on Civil and Political Rights (***ICCPR***), an international treaty to which the United States is party, "because FGM is an abuse encompassed within the treaty's broad goals and prohibitions."  Gov't at 18.  The ICCPR is of foundational importance, comprising one of three conventions known as the International Bill of Human Rights.  A central aim of the ICCPR is to afford freedom from discrimination and violence to women and girls, and this aim is furthered by domestic legislation targeting

individual conduct that violates the human rights guaranteed by the ICCPR. Section 116—duly enacted by the U.S. legislative and executive branches after specific findings about the need for a federal response to the practice—marks a proper exercise of the Treaty Power.

### A. Congress's Enactment of 18 U.S.C. § 116 Rationally Relates to the United States' Treaty Commitments and Is Owed Substantial Deference

The ICCPR establishes the right for individuals to be protected against torture and inhuman treatment, for women and girls to be protected against violence, and for any child to have "such measures of protection as are required by his [or her] status as a minor."[22]  Signed by the President and ratified by the Senate, the ICCPR has legally binding effect within the United States. U.S. CONST., art. II, § 2, cl. 2; *Medellin v. Texas*, 552 U.S. 491, 504-05 (2008).  To implement the ICCPR, the United States has criminalized individual acts that violate the human right to be free from discrimination and violence in Section 116 and guaranteed by the ICCPR.

---

[22]  International Covenant on Civil & Political Rights, June 8, 1992, 999 U.N.T.S. 171 (adopted by the United States Sept. 8, 1992), arts. 2(1), 3, 7, 24, 26 (*ICCPR*).  *See also* U.N. Human Rights Committee (*UNHRC*), General Comment No. 28: Article 3, The Equality of Rights Between Men and Women, Doc. CCPRFGM/C/21/Rev.1/Add.10, ¶11 (Mar. 29, 2000) (*General Comment No. 28*). Decisions and Comments of the UNHCR are not binding but are considered persuasive authority for the United States and other signatories when interpreting their duties under the ICCPR.

As reflected in the congressional findings accompanying Section 116, FGM is a grave human rights abuse that demands a federal response. Congress determined that the practice of FGM leaves "physical and psychological health effects that harm the women involved." The "unique circumstances" surrounding the practice of FGM, moreover, "place it beyond the ability of any single State or local jurisdiction to control."[23] Reflecting the considered judgment of the legislative and executive branches as to how best to implement the treaty commitments of the United States, Section 116 is owed substantial deference by this Court.[24]

---

[23]    Congressional Findings, Pub. L. 104-208, Div. C, § 605(a). Consistent with the enactment of Section 116, U.S. AID has encouraged other countries to criminalize FGM/C. U.S. DEPARTMENT OF STATE, USAID, UNITED STATES GLOBAL STRATEGY TO EMPOWER ADOLESCENT GIRLS 20 (Mar. 2016). *See also* U.S. DEPARTMENT OF STATE, USAID, UNITED STATES STRATEGY TO PREVENT AND RESPOND TO GENDER-BASED VIOLENCE GLOBALLY (2012).

[24]    Congressional Findings, Pub. L. 104-208, Div. C, § 605(a); *Williamson v. Lee Optical*, 348 U.S. 483, 487 (1955) (holding that although the law at issue may have been "needless," it was "for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement"); *Abbott v. Abbott*, 560 U.S. 1, 12 (2010) (referring to the "well-established canon of deference" to "the Executive Branch's interpretation of a treaty"); Katzenbach v. McClung, 379 U.S. 294 (1964) (deferring to congressional factfinding in respect of Title II of the Civil Rights Act of 1964). *Cf.* United States v. Lopez, 514 U.S. 546, 562 (1995) (striking down legislation for which no "congressional findings regarding the effects upon interstate commerce" were available); Garcia v. San Antonio Transit Auth., 469 U.S. 528, 557 (1985) (noting that "[d]ue respect for the reach of congressional power within the federal system" requires overruling *National League of Cities v. Usery*, 426 U.S. 833 (1976), in which the Court had attempted to distinguish between "integral" and non-integral governmental functions in interpreting the law on state immunity).

## B. Numerous Countries Have Passed National Level Bans in Furtherance of the International Condemnation of FGM

With Section 116, the United States stands alongside numerous other countries that have also condemned FGM at the national level.  Consistent with the international consensus that FGM is a human rights abuse that violates women's equality and the right to be free from discrimination and violence, at least 59 countries have passed laws against FGM.[25]   A few examples of the criminal statutes that other states enacted to prevent FGM are outlined below.  As these examples demonstrate, the enactment of 18 U.S.C. § 116 fully accords with international practice.

### 1.  United Kingdom

The United Kingdom has long banned FGM as one of the most egregious breaches of human rights.  England and Wales first criminalized FGM from 1985.[26] Since then, its Parliament has continued to pass amendments extending the severity and scope of this criminal offense.  For instance, in 2003, it increased the maximum penalty associated with FGM, and extended the scope of the law to

---

[25]   World Health Organization, Factsheet – Female Genital Mutilation, January 2018,           http://www.who.int/en/news-room/fact-sheets/detail/female-genital-mutilation.

[26]   Prohibition of Female Circumcision Act 1985 (re-enacted under the Female Genital Mutilation Act 2003), §§ 4, 5 (Eng.).

apply extra-territorially.[27]   In 2015, it also introduced court-issued protection orders for girls at risk of FGM, and obligated health and social workers and teachers to report all suspected cases of FGM.[28]   Such far-reaching measures have been enacted in response to FGM's fundamental breach of human rights, as described by English Members of Parliament:

> FGM violates a litany of human rights, including the right to security and physical integrity, the right to be free from torture and cruel, inhumane or degrading treatment, and potentially also the right to life.[29]

### 2.  New Zealand

FGM is a criminal offense in New Zealand.[30]   This proscription flows from both the need to protect human rights and New Zealand's international obligations:

> [FGM] is widely condemned by the international community. It is condemned by the United Nations. This legislation has been brought in because of our responsibilities of being part of the United Nations community.[31]

---

[27]     *Id.*

[28]     UNITED KINGDOM HOME OFFICE, FGM PROTECTION ORDERS: A GUIDE TO THE COURT PROCESS (1st ed. 2015).

[29]     Stmt.  by  Lord  Alton  of  Liverpool, 792 Parl. Deb. H.L. col. 1424 (July 20, 2018).

[30]     Crimes  Amendment  Act  1995 (1995  No 49),  §204A(1), http://www.legislation.govt.nz/act/public/1961/0043/137.0/DLM329734.html.

[31]     Alec Neill (Waitaki) Crimes Amendment Bill (No. 2) (second reading) 1995, Hansard vol. 547.

### 3. Canada

Performing FGM is a criminal offense in Canada,[32] as is transporting a child outside of Canada for the purposes of FGM.[33]  A parent who performs FGM on their child may be charged with aggravated assault.[34]  Furthermore, a parent who agrees for another person to perform FGM on their child can also be convicted as a party to the offense.[35]

The Human Rights Commissions of Canadian provinces have recognized the practice of FGM as a "violation of human rights." [36]   In addressing this "internationally recognized health and human rights concern," [37] Canada has acknowledged its international law obligations, including under the ICCPR.

### 4. Germany

The Federal Republic of Germany has criminalized FGM since 2013.[38] Early discussions on criminalizing FGM drew attention to the "severe

---

[32]     Criminal Code, R.S.C. 1985, c C-46, §268(3).

[33]     *Id.* at § 273(3).

[34]     *Id*.

[35]     *Id.* at § 21(1).

[36]     *See, e.g.*, Ontario Human Rights Commission, Policy on Female Genital Mutilation (FGM): FGM in Canada (Apr. 9, 1996), http://www.ohrc.on.ca/en/policy-female-genital-mutilation-fgm/4-fgm-canada.

[37]     *Id.*

[38]     German Criminal Code, § 226a provides "Mutilation of Female Genitalia. (1) Whosoever mutilates the outer genitalia of a female person is to be imprisoned

pain, high rate of complications, as well as physical and psychological consequences for affected girls and women."[39]   Section 226a of the German Criminal Code criminalizes all forms of FGM.   The bill's sponsors noted that failing to combat FGM would "violate international standards,"[40] and successive government reports have considered Germany's criminalization to be consonant with its international human rights commitments with respect to women and girls.[41]

### 5. South Africa

FGM is a criminal offense in South Africa under the Children's Act of 2005.[42]   The Act expressly states that "[e]very child has the right not to be subjected to social, cultural and religious practices which are detrimental to his or her well-being."[43]   This Act reflects the obligation found in Article 5 of the Protocol to the African Charter on Human and Peoples' Rights on the Rights of Women in Africa, which specifically obliges state parties to enact legislation

---

for not less than one year. (2) In less severe instances a prison sentence of six months up to five years is to be recognized."

[39]   German Parliament, Seventeenth Legislative Period, *Draft Criminal Law Amendment – Effective Campaign Against Female Genital Mutilation*, Doc. No. 17/12374 (Feb. 19, 2013).

[40]   *Id.* at p. 2.

[41]   German Parliament, Eighteenth Legislative Period, *Twelfth Report of the Federal Government on Its Human Rights Politics*, Doc. No. 18/10800 (Dec. 22, 2016)

[42]   Children's Act 38 of 2005, §§12(3), 305(1), 305(6) BSRSA (updated through 2012).

[43]   *Id.* at §12(1).

prohibiting FGM, to engage in public awareness against FGM, and to provide victim support for women affected by FGM.[44]

## 6. Kenya

FGM is criminalized in Kenya under the 2011 Prohibition of Female Genital Mutilation Act, which also prohibits a number of FGM-related offenses.[45]  Like the prohibition of FGM in South Africa's Children's Act, this Act reflects the obligation found in the Protocol to the African Charter on Human and Peoples' Rights on the Rights of Women in Africa.  Kenya's fight against FGM is further strengthened by its proscription under the Children Act 2001,[46] the Protection Against Domestic Violence Act 2015,[47] and its Penal Code.[48]

Kenya also uses legislation to encourage a cultural shift regarding the perception and practice of FGM.  It has established the Anti-FGM Board, a semi-autonomous government agency that advises the government on matters relating to FGM; designs, supervises, and coordinates FGM-related policy and public

---

[44]    Protocol to the African Charter on Human and Peoples' Rights on the Rights of Women in Africa (***Maputo Protocol***), Sept. 13, 2000, OAU Doc. CAB/LEG/66.6,    art.    5,    http://www.achpr.org/files/instruments/women-protocol/achpr_instr_proto_women_eng.pdf.

[45]    Prohibition of Female Genital Mutilation Act (No 32 of 2011) (revised in 2012) [hereinafter FGM Act 2011].

[46]    Children Act (No. 8 of 2001), art. 14. (revised in 2017).

[47]    Protection Against Domestic Violence Act (No. 2 of 2015), art. 3(1)(ii).

[48]    Kenyan Penal Code (revised in 2014), arts. 4 (definition of "grievous harm"), 234.

awareness programs; and provides support to institutions and agencies working to eradicate FGM.[49]

## C. The ICCPR Is One of Several International Treaties Condemning FGM As A Fundamental Human Rights Violation

This is just a sampling of the anti-FGM laws that have been enacted and implemented by countries around the world as an expression of their international human rights commitments.   These laws have been justified by reference to a number of international treaties, including the ICCPR.   Because FGM violates a number of fundamental human rights—including the rights of women and girls, the right to privacy and bodily integrity, the prohibition against torture, and the prohibition against discrimination—it is condemned in a host of international human rights instruments.

On the regional level, human rights instruments in Europe[50] and Africa[51] have characterized FGM as a discriminatory violation of women and girls' human

---

[49]     Kenya Office of the Attorney General and Department of Justice, Response to the Questionnaire for Member States – H.R.Council Res. 27/22, (Apr.21, 2015). *See* FGM Act, *supra* note __, pt. II.

[50]     In Europe, the Convention on Preventing & Combating Violence Against Women And Domestic Violence specifically requires the criminalization of FGM/C. The Council of Europe Convention on Preventing & Combating Violence Against Women And Domestic Violence, Apr. 7, 2011, C.E.T.S. No. 210.   The United States participated in this treaty's development and the treaty is open to accession by non-European States, although the U.S. is not currently a party to it. The European Court of Human Rights has repeatedly recognized that FGM/C may amount to illegal torture. Izevbekhai v. Ireland, Eur. Ct. H.R. Case No. 43408/08,

rights.  Likewise, FGM has been characterized as a violation of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (**CAT**),[52] a treaty to which the United States is party.  Article 1(1) of that Treaty defines torture as any act in which "severe pain or suffering" is "intentionally inflicted on a person . . . for any reason based on discrimination of any kind."[53]

---

¶73 (May 17, 2011); *Omerodo v. Austria*, Eur. Ct. H.R. Case No. 8969/10 (Sept. 2011); *Collins and Akaziebe v. Sweden*, Eur. Ct. H.R. Case No. 23944/05, (Mar. 8, 2007); *Sow v. Belgique*, Eur. Ct. H.R. Case No. 27081/13, ¶62 (Jan. 19, 2016). The European Convention on Human Rights, Nov. 4, 1950, 213 U.N.T.S. 221, E.T.S. 5, art. 3 provides: "No one shall be subjected to torture or to inhuman or degrading treatment or punishment.", E.T.S. 5.

[51]    The Protocol to the African Charter on Human and Peoples' Rights on the Rights of Women in Africa requires "necessary legislative and other measures to be taken to eliminate "all forms" of FGM/C. African Charter on Human and Peoples' Rights, Protocol on the Rights of Women in Africa, art. 5, July, 11 2003, http://www.refworld.org/docid/3f4b139d4.html. Forty African States have signed and ratified the Protocol, and a further 13 have signed but not yet ratified. 22 of the 28 African countries where FGM is practiced have passed laws banning the practice.

[52]    The United States signed the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85 (hereinafter **CAT**) on 18 April 1988 and ratified it on 21 October 1994. The United States signed the ICCPR on 5 October 1977, and ratified it on 8 June 1992.

[53]    CAT art. 1(1) provides "For the purposes of this Convention, the term "torture" means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions".

The U.N. Committee against Torture (**CAT Committee**) has confirmed that FGM can constitute torture,[54] as have the U.N. Special Rapporteur on Violence Against Women[55] and the U.N. Special Rapporteur on Torture.[56]  The CAT Committee regularly calls on States to outlaw FGM.[57]

The broad condemnation of FGM in a variety of international treaties besides the ICCPR serves to strengthen the decision of the legislative and executive branches to enact Section 116.  There can be no question that Section 116 reflects a proper exercise of the Treaty Power.

---

[54]    CAT Committee, General Comment No. 2, Doc. CATFGM/C/GC/2, ¶18 (Jan. 24, 2008).

[55]    Rep. of the U.N. Special Rapporteur on Torture & Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. A/HRC/7/3 (Jan. 15, 2008); Rep. of the U.N. Special Rapporteur on Torture & Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. EN.4/1986/15 (Feb. 19, 1986) ¶ 38; Report of the Special Rapporteur on torture U.N. Special Rapporteur, *Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment*, U.N. Doc. A/HRC/7/3, ¶¶50-54 (Jan. 15, 2008); Rep. of the U.N. Special Rapporteur on Torture & Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. A/HRC/31/57 (Jan. 5, 2016).

[56]    Rep. of the U.N. Special Rapporteur on Torture & Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. A/HRC/31/57 (Jan. 5, 2016), ¶ 58.

[57]    CAT Committee, General Comment No. 2, Doc. CATFGM/C/GC/2, ¶ 18 (Jan. 24, 2008). See, e.g., CAT Committee, Conclusion and recommendations of the Committee against Torture: Cameroon, Doc. CATFGM/CFGM/CR/31/6, ¶7(b) (Feb. 11, 2004); CAT Committee, Concluding Observations on the initial report of Mauritania adopted by the Committee at its fiftieth session (6–31 May 2013),reads "[i]n line with the commitment that it made during the universal periodic review in November 2010, the State party should urgently adopt a law prohibiting female genital mutilation". Doc. CAT/C/MRT/CO/1, ¶24 (June 18, 2013)

## III.  THE UNITED STATES' ENACTMENT AND ENFORCEMENT OF 18 U.S.C. 116 IS JUSTIFIED UNDER THE COMMERCE CLAUSE

Section 116 is also an appropriate use of Congress' powers under the Commerce Clause.  The act of mutilation is a commercial activity that often entails interstate travel, as in this case.  A fragmented State response to FGM is no response at all; this is a quintessential area for federal intervention.  Section 116 falls well within the powers afforded Congress in Article I, section 8, of the Constitution, and the propriety of Congress's decision to exercise the power is only strengthened by the fact that Section 116 accords with the international condemnation of FGM.

FGM is practiced by a number of communities within the United States. The Population Reference Bureau notes that although some of these communities are concentrated in a few large States, they have increasingly fanned out to new destinations across the country.[58]  Individuals who wish to subject their children to the practice are often required, as in this case, to cross state borders in search of FGM's practitioners.  This phenomenon is seen in the graphic below.

---

[58]    Population Reference Bureau, Female Genital Mutilation/Cutting in the United States, 2016, https://www.prb.org/us-fgmc.



**Figure 1: Top metropolitan areas within the United States for the prevalence of FGM. States without laws against FGM are shown in red. Since the date of this map, Michigan and New Hampshire have also passed FGM bans.**

A patchwork of state-level bans is patently insufficient to eradicate the nationwide market for FGM services, which can generate substantial profits for its illicit practitioners.   As Senator Wellstone remarked during Congress's deliberations, Section 116 "would also send a clear message to American medical professionals," who could otherwise earn "as much as $3,000 to perform mutilations on young girls."   See Defs.' Ex. I (141 Cong. Rec. S9912 (daily ed. July 13, 1995) (statement of Sen. Wellstone)).   That perpetrators of FGM receive financial remuneration for their services is reflected in survivors' testimonials, at **Annex 1**.

23

Today, only 27 States have laws against FGM. Of these 27 States, only 11 have specific provisions banning the transportation of a child out of the State to perform FGM which would be banned if performed within the State. [59] (A compilation of state laws against FGM is attached as **Annex 2**.) Without a federal prohibition, parents could simply transport their children to States with no prohibition on FGM, thereby perpetuating this extreme form of child abuse with impunity.

The practice of FGM transcends international as well as inter-state borders. As noted during legislative debate, the practice affects tens of millions of women around the world, and is prevalent in cities from New York to Seattle. See Defs.' Ex. I (141 Cong. Rec. S9911 (daily ed. July 13, 1995) (statement of Sen. Wellstone)). In major airports, U.S Immigration and Customs Enforcement and Homeland Security officials educate individuals and families travelling to and from countries with a high prevalence rate of FGM that it is unlawful to take a girl outside the country to perform FGM.[60] U.S. Citizenship and Immigration Services

---

[59]    Equality Now, Factsheet on Female Genital Mutilation/Cutting within the United States, September 2018, https://d3n8a8pro7vhmx.cloudfront.net/equalitynow/pages/216/attachments/origin al/1536875107/FGMintheUS_factsheet_Sept2018.pdf?1536875107.

[60]    U.S. Immigration and Customs Enforcement, ICE fights to protect girls and women from mutilation and abuse, 20 November 2017, https://www.ice.gov/news/releases/ice-fights-protect-girls-and-women-mutilation-and-abuse.

also provides a notice with information on the legal status of FGM to immigrants entering the country, using Section 116 as a tool for prevention as well as enforcement.

For these reasons, FGM necessitates federal action. Given the commercial and cross-border nature of FGM, both the legislative and executive branches have rightly determined that only the U.S. Government is situated to effectively combat a practice which irreparably harms girls and women across the United States. The decision by Congress to exercise its power under the Commerce Clause is only strengthened by the fact that its intervention is necessary to provide a uniform and efficacious response to a human rights violation condemned by the numerous international instruments discussed above.

## IV.   CONCLUSION

For the reasons stated above, the defendants' Motion should be dismissed

and counts one through five of the Indictment should be upheld.

Dated:        Washington, D.C.
              September 24, 2018

Respectfully Submitted,

_____

| | |
|---|---|
| Shelby Quast | Luke A. Sobota |
| Jacqui Hunt | *Counsel of Record* |
| Divya Srinivasan | Jessica Ji |
| EQUALITY NOW | Amelia Keene |
| 125 Maiden Lane B | Philipp Kotlaba |
| New York, NY 10038 | Kimberly Larkin |
| | Ana Lenard |
| Mariya Taher | Laura Pereira |
| SAHIYO | Nastasja Suhadolnik |
| 45 Prospect Street | *Of Counsel* |
| Cambridge, MA 02139 | THREE CROWNS LLP |
| | 3000 K Street NW, Suite 101 |
| Jaha Dukureh | Washington, DC 20007 |
| SAFE HANDS FOR GIRLS | (202) 540-9477 |
| 225 Peachtree Street, NE | luke.sobota@threecrownsllp.com |
| Atlanta, GA 30303 | |
| | Lucy Martinez |
| Zehra Patwa | *Of Counsel* |
| WESPEAKOUT | |
| Tara Mahal, Plot No. 756 | Schona Jolly QC |
| 5th Road | *Of Counsel* |
| Khar West, Mumbai | CLOISTERS |
| Maharashtra 4000055 | 1 Pump Court |
| India | London, EC4Y 7AA |
| | United Kingdom |

*Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Dated:        September 24, 2018

/s/ Luke A. Sobota
Luke A. Sobota